## DAVID W. RESLER AND ANOTHER v. W. A. ROGERS AND ANOTHER.

139 N. W. (2d) 379.

December 24, 1965—No. 39,622.

*Nolan, Alderman & Holden,* for appellants.

*Chalupsky, Spooner & Moriarty,* for respondents.

FRANK T. GALLAGHER, C.

This is an appeal by defendants from a declaratory judgment of the district court. On March 4, 1949, plaintiffs, David W. Resler and Verna Resler, and defendants, W. A. Rogers and Lavina Rogers, entered into a contract for deed whereby defendants agreed to sell and plaintiffs agreed to purchase certain lands in Cass County. Subsequently, on April 10, 1950, defendants conveyed the property to plaintiffs by a warranty deed which, after describing the property, contained the following provisions:

"Also subject to the right of the State of Minnesota to use the westerly 3 rods of the NW ¼ of SW ¼, Section 10, Township 141, Range 27, as a haul road for transporting sand and gravel from State Pit No. 2179, and

"Also excepting mineral reservations, and

"Subject to public road easements."

Sand, gravel, and clay (sometimes referred to herein as gravel) were removed in the fall of 1963 by the State of Minnesota from a part of the

land conveyed as well as from an adjacent state pit. The gravel was removed by open-pit methods and used on Highway No. 34 by the state. Under a 3-year lease effective in February 1963, it contracted to pay plaintiffs for gravel removed at the rate of 8 cents per yard, removing about $2,500 worth of gravel during the period involved. A controversy arose between the parties to this action over the ownership of the gravel taken from the property by the state and plaintiffs brought this declaratory judgment action seeking a determination that they are the owners of minerals and mineral rights except as reserved to the state; or, in the alternative, if the defendants reserved mineral rights in the lands conveyed, the sand, gravel, and clay are not minerals and therefore not reserved.

At the trial only two exhibits, the contract for deed and the warranty deed, were introduced into evidence, and plaintiff David Resler was the only witness. He testified that he farmed the land that was conveyed, although the length of time he had been using the land for farming prior to the time of trial was not disclosed. He further said that he knew defendants had reserved to themselves in the warranty deed lakeshore land within the metes and bounds of the property conveyed. There was no evidence disclosing negotiations between the parties prior to the conveyance.

The language of the warranty deed "[a]lso excepting mineral reservations" served as the basis for the claim by defendants that they had reserved mineral rights to themselves; that sand, gravel, and clay were included in the term "mineral"; and that they were entitled to payment from the state for the gravel removed from the property. Because of the claims of defendants, the state withheld payment for the gravel.

The case was tried without a jury, and the court found that the phrase "also excepting mineral reservations" failed to reserve to defendants mineral rights in the conveyed property. It further found that sand and gravel of the quality removed from the premises are not minerals within the commonly understood meaning of that word in a reservation of mineral rights in a deed. Accordingly, the court concluded that plaintiffs were entitled to judgment against defendants declaring that no mineral reservation was created by the deed delivered by them to plaintiffs and that the sand and gravel in such quality as were removed from the premises were not min-

erals within the commonly understood meaning of that phrase in a reservation of mineral rights in a deed.

The legal issues raised by defendants on appeal are: (1) Whether the trial court properly adjudicated that no mineral reservation was created in defendants by delivery of the deed; and (2) whether the court properly adjudicated that the sand and gravel removed from the premises conveyed are not minerals.

Defendants argue that the words in the warranty deed did effectively create a mineral reservation on their behalf and for their benefit. They cite as controlling Carlson v. Minnesota Land & Colonization Co. 113 Minn. 361, 129 N. W. 768, and Witt v. St. Paul & N. P. Ry. Co. 38 Minn. 122, 35 N. W. 862.

Carlson v. Minnesota Land & Colonization Co. *supra,* involved a coal and iron mining reservation which appeared in the deed. This court said that there were certain elementary principles with reference to the construction of reservations and exceptions in deeds, one being that the intention of the parties is to be ascertained from the entire instrument, including the reservations or exceptions. This includes the ordinary meaning of the words, recitals, context, subject matter, and the object or purpose of introducing the exception or reservation clause, the nature of the reservation or exception, and the attending facts and circumstances surrounding the parties at the time of the making of the deed. The court further stated that a reservation or exception is void when totally repugnant to the granting clause and that when the grant is direct and positive it cannot be set aside by an indirect method in the form of an exception or reservation. We also said that, generally speaking, a reservation is some new thing created by the terms of the grant—for example, an easement or right-of-way—while an exception is a part of the thing granted, and must be in esse at the time of the grant.

Defendants argue that the circumstances of the instant case indicate an intention to except from this conveyance all minerals because at the time of the conveyance all parties were aware of the existence of sand and gravel, in marketable quantities, on the land; that exception of mineral rights in conveyances was common practice in the area involved; and that it is apparent that during the interim between the time of execution of the

contract for deed and the warranty deed some discussion regarding the conveyance must have occurred, because the deed did not convey all of the property described in the contract for deed. The record does not appear to contain evidence to sustain these arguments.

In Witt v. St. Paul & N. P. Ry. Co. *supra,* this court stated that it is competent for the grantor to convey such interest in or portion of his lands as he chooses, and to adopt any suitable language to evidence such intention, and that too much stress is not to be laid on the grammatical construction or forms of expression used. Defendants therefore contend that the trial court should have declared that a mineral reservation was created in the deed to plaintiffs.

Plaintiffs, on the other hand, argue that the phrase "also excepting mineral reservations" appeared in the deed between two existing exceptions, one subjecting the conveyance to the right of the state to use certain land as a haul road and one subjecting it to public-road easements. They contend that this indicates that defendants did not warrant title to minerals on the property, but that it does not go to the extent of creating a mineral reservation. Plaintiffs also argue that the reservation claimed by defendants is repugnant to the grant because the removal of sand, gravel, and clay by open-pit methods destroys the land surface for farm use.

■ We find no reversible error in the trial court's decision that no mineral reservation was created in defendants by the deed of April 10, 1950. The court limited its finding to that deed when it said that the phrase "also excepting mineral reservations" failed to reserve the mineral rights on the property conveyed. It is our opinion that the phrase, placed as it was in the deed, created an ambiguity [1] as to just what the parties intended by it.

The rule in Minnesota is clear that all ambiguity in a deed shall be resolved in favor of the grantee (plaintiffs here). International Lbr. Co. v.

---

[1] Black, Law Dictionary (4 ed.) p. 105, defines ambiguity as follows: "Doubtfulness; doubleness of meaning. * * * Duplicity, indistinctness, or uncertainty of meaning of an expression used in a written instrument."

Webster's Third New International Dictionary (1961) p. 66, also defines ambiguity as "the condition of admitting of two or more meanings, of being understood in more than one way * * * ."

Staude, 144 Minn. 356, 175 N. W. 909. We recognize, however, that the rule is modified by Carlson v. Minnesota Land & Colonization Co. *supra,* which holds that in construing reservations and exceptions in a deed, the proper method is to determine the intention of the parties from the entire instrument and the facts and circumstances surrounding the making of the deed.

The only evidence presented at the trial tending to indicate the intention of the parties was the contract for deed, which made no reference to a mineral reservation in the deed. The only witness, plaintiff David Resler, described the type of material that was removed—sand and gravel mixed with some clay. When asked on cross-examination if the pit created by the state's operations was left in as good a condition as it could be, he replied that he supposed "it could be in better condition" as there was "much clay piled up in piles" and "a large hole there and they said they wouldn't fill the hole up." His testimony would indicate that it was his intention that there was no reservation in the deed, particularly with respect to sand and gravel. It is our opinion that the court could properly find from the record here that the purported reservation in the deed did not reserve the mineral rights.

■ The second issue raised by defendants is whether the court erred in finding that the sand and gravel *of the quality removed* from the premises were not minerals within the commonly understood meaning of that word in a reservation of mineral rights in a deed. Defendants argue on appeal that the substance of gravel is a mineral within the commonly accepted definition of the word "minerals." In view of our decision that the deed did not contain a reservation of mineral rights, we need not pass on this issue here. However, inasmuch as that question has not been specifically determined by this court and is of importance in our jurisdiction, we shall consider it.

There is a conflict of authority with respect to what "minerals" includes. Defendants quote Annotation, 148 A. L. R. 780, on this point as follows:

"While the word 'minerals' includes, in a technical sense, all natural inorganic substances forming a part of the soil, the term is used in so many senses, dependent upon the context, that such a definition obviously is too broad as being impractical of application in any particular case. On the

other hand, to confine the definition of such word to precious minerals, for example, would limit its application in such manner as would at once destroy a large part of the value of an exception of minerals in a grant of land. Accordingly, a number of authorities prefer to define a 'mineral' as any natural substance having sufficient value to be mined, quarried, or extracted for its own sake or its own specific use. 36 Am Jur 283, Mines and Minerals, § 4."

Defendants also cite Armstrong v. Lake Champlain Granite Co. 147 N. Y. 495, 42 N. E. 186, and McCombs v. Stephenson, 154 Ala. 109, 44 So. 867. In the Armstrong case, the court considered whether granite came within the purview of the term "minerals" as that term was used in a reservation. It determined that the words "minerals and ores" in a grant, standing alone, would include granite upon the premises. In the McCombs case, the Supreme Court of Alabama determined that unless there were some qualifying words in the instrument showing a contrary intent, a conveyance of "minerals" included shale.

Although no Minnesota case is in point, plaintiffs refer to an opinion issued by the attorney general, No. 311-J, August 13, 1946, which made a lengthy review of cases on the question whether sand or gravel is a mineral. The attorney general also reviewed Minnesota statutory provisions and demonstrated that the Minnesota legislature has distinguished ordinary sand and gravel from minerals and placed such sand and gravel in the same classification as peat, subsoil, and topsoil. It was his opinion that Minn. St. 282.20 [2] does not include sand and gravel. Numerous cases from other jurisdictions also hold in effect that sand and gravel are not minerals. See, Annotation, 95 A. L. R. (2d) 843.

The Texas Court of Civil Appeals in Watkins v. Certain-Teed Products Corp. 231 S. W. (2d) 981, determined that sand and gravel are not minerals within the ordinary and natural meaning of those words in a reservation unless the sand and gravel are exceptional in character or have a peculiar value. In a Federal Court of Appeals case where the United States condemned certain lands but reserved the minerals to the owners,

---

[2] Minn. St. 282.20 provides: "Any sale of such forfeited lands shall be subject to exceptions and reservations in this state of all minerals and mineral rights."

it was held that sand and gravel were not minerals within the meaning of the mineral reservation. Bumpus v. United States (10 Cir.) 325 F. (2d) 264.

We shall not attempt to distinguish the various classifications in other jurisdictions with reference to the sand and gravel as substances included in mineral reservations in deeds. We are satisfied that the trial court correctly concluded in the instant case that sand and gravel, in such quality as were removed from the premises referred to herein, were not minerals within the commonly understood meaning of that phrase in a reservation of mineral rights in this jurisdiction.

Affirmed.